LOUIS YOUNG *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 17, 1906.*

1. EVIDENCE—*when parol proof of contents of letter is not admissible.* Parol proof of the contents of a letter is not admissible unless a proper foundation has been laid by notifying the party having possession of the letter to produce it upon the trial or by showing that it was lost or destroyed.

2. SAME—*original telegram as filed in sending office is the best evidence.* The original telegram filed in the sending office is the best evidence of its contents, and the copy retained for the files of the receiving office is not admissible, where it is not shown that it was a copy of the original or that the original was lost or destroyed.

3. CRIMINAL LAW—*when admission of secondary evidence is reversible error.* Permitting a police officer, for the purpose of connecting one of the defendants with the crime charged, to state what was written on a card taken from another of the defendants without requiring the production of the card by the assistant State's attorney, to whom it had been delivered, or proof of its loss or destruction, is reversible error.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

At the June term, 1905, the grand jury of Cook county returned into the criminal court of said county an indictment against Louis Young, Edward C. Keefe, and one McCormick, charging them 'with unlawfully and feloniously obtaining from Patrick H. Greear, on the 15th day of June, 1905, the sum of $1200 in cash by means of the confidence game. Louis Young and Edward C. Keefe were arrested, McCormick not being found, and upon a trial Young and Keefe were found guilty and sentenced to the penitentiary for an indeterminate period, and they have sued out a writ of error from this court to the criminal court of Cook county to reverse said judgment of conviction.

It appears from the evidence that Greear and Keefe, who had known each other for some time, met in the city of Minneapolis, Minn., in the early part of June, 1905, where they made an arrangement to go to Chicago and in company with McCormick make "sure thing" bets upon horse races. McCormick was represented by Keefe to Greear to be a friend of his who was in the employ of the Western Union Telegraph Company, and who received the reports of the result of horse races as they were telegraphed into Chicago over said company's lines from the different cities where said races took place. The money with which to make the bets was to be furnished by Greear, and the scheme was to be carried out by McCormick holding back the reports of the result of horse races as they were received at the office of the Western Union Telegraph Company in Chicago from the book-makers of that city, until he, by telephone, had notified Greear what horse or horses had won the particular race or races upon which Greear was to buy pools, and give Greear time to wager his money upon the winning horse or horses before the book-makers were notified by McCormick of the result of the race or races, and after Greear had drawn the money from the book-maker or makers he was to divide the winnings with Keefe and McCormick. On the 14th of June Greear and Keefe arrived in the city of Chicago, and Greear,

in company of Keefe, met McCormick, whose true name was Fred Gondorf, the next day, and it was agreed between Greear, Keefe and McCormick that Greear was to buy pools that afternoon to the amount of $1200 upon the winning horse which was to run in a race at Delmar Park, St. Louis, the name of which horse was to be given Greear by McCormick by telephone so soon as he received the report of the race by telegraph and before the result had been made known to the book-makers in the city of Chicago. Keefe and McCormick left Greear about noon on the 15th at the Briggs House, in the city of Chicago, with the understanding that Keefe was to return in the afternoon and go with Greear to a book-maker, where the bet would be made so soon as Greear heard from McCormick, by telephone, the name of the horse upon which he was to place his money. Keefe returned to the Briggs House about three o'clock in the afternoon, and he said to Greear they would try Wagner Bros., and Keefe and Greear then went to the Rand-McNally building, situated upon Adams street, near LaSalle street. As they approached the building Young was standing inside the north entrance, apparently selling pools, and Keefe said to Greear he (Young) was Wagner Bros.' main man. They went into the building, where they remained only a moment, and as they passed out Keefe said to Young, "Do you bet on horse races?" or words to that effect, and he replied he did. Keefe and Greear crossed the street and entered a restaurant. Keefe went to the telephone and called up the Majestic Hotel, where he had told Greear he was stopping, and said to the person who answered the telephone, "If anyone calls me up, give them this number," giving to the person with whom he was talking the number of the telephone at the restaurant. He and Greear then had a drink, and the telephone bell rang almost immediately, when Keefe went to the telephone and then said to Greear, "Mac is here and wants you." Greear went to the telephone, and McCormick said to him: "The race has been run and Eleanor Howard has won the

race; bet your money on that horse." Greear took a card from his pocket, and under the instruction of Keefe wrote the name of the track, the name of the horse, and that he bet $1000, and he and Keefe hurried across the street to where Young was standing. Other persons were apparently making bets with Young, and Keefe said to Greear he had arranged with those people to make bets with Young so that Young would not be suspicious when they made their bet. When Greear reached Young he gave him $1000 and the card, and Young asked him how he wanted to bet, and Greear said, "To win," and Young wrote on the card "To win," and took the card and money. Keefe urged Greear to bet more, and Greear then made the bet $1200. Keefe said to Greear, "We will go across the street and in a few minutes come back and get our money." They returned to the restaurant, where they remained a few minutes, and then went back to where Young had been standing. When they arrived, Young came out of the building and said, "You have lost; if you had bet the other way you would have won $3600." Keefe said, "How did you bet?" Greear replied, "To win." Keefe said to him, "McCormick instructed you to bet 'for place;' there must be some mistake; let's go and see Mac." Greear and Keefe then went to the Grace Hotel, where they met McCormick, and he insisted that he had instructed Greear to bet "for place" and not "to win," and had he followed his instructions they would have won, as Eleanor Howard came in second. They then agreed to try the scheme the next day, and separated with the understanding that they meet that evening at 7:30 at Greear's hotel and arrange for the bet the next day. Greear had, however, become suspicious of the loyalty of McCormick and Keefe, and had Keefe arrested and sought to have McCormick arrested, but he could not be found. Young was arrested at his home that evening. Keefe had no money when he and Greear arrived in Chicago. When he was arrested two letters were found in his pocket addressed to parties in Minneapolis. Each letter

contained a $20 bill, which was, the letter stated, in payment of a loan made to him while he was in that city. He also had a card in his vest pocket with the initials of Young, his house address and telephone number written thereon. Keefe did not testify on the trial. He produced, however, one Samuel Leopold, who testified he paid Keefe a gambling debt of $100 on June 15. Young testified he did not know McCormick or Keefe, and that he had never seen Keefe or Greear prior to the occasion when he made the bet with Greear; that he was a "curb-stone book-maker," and had been in that business in the city of Chicago for two or three years, and a number of other parties testified that Young had been a curb-stone book-maker in the city of Chicago for two or three years and that they had made bets with him.

The theory of the prosecution is, that McCormick, Young and Keefe conspired together to work the confidence game on Greear, and that he was brought to Chicago by Keefe for that purpose, and that while thus working together they obtained from Greear $1200. The theory of the defense of Keefe is, that Keefe, McCormick and Greear conspired together to work the scheme of making "sure thing" bets upon the book-makers of Chicago; that they attempted to work the scheme on Young and that they failed, and Greear lost his money by reason of the fact that Greear did not follow McCormick's directions by betting his money upon Eleanor Howard "for place" instead of "to win." And the theory of the defense of Young is, that he was a curb-stone book-maker in the city of Chicago; that he made a bet with Greear, who was a stranger to him, of $1200 that the horse Eleanor Howard would win; that he fairly won the bet, and that while the evidence may show him guilty of the crime of gambling, it does not show him guilty of the crime with which he was charged and convicted.

JAMES T. BRADY, and E. J. RABER, for plaintiffs in error.

W. H. STEAD, Attorney General, and EDGAR ELDREDGE, (JOHN J. HEALY, State's Attorney, and FRANK CROWE, of counsel,) for the People.

Mr. JUSTICE HAND delivered the opinion of the court:

The first contention of plaintiffs in error is that the evidence is not sufficient to sustain a conviction. Greear admits that he formed a conspiracy with Keefe and McCormick to defraud the book-makers in Chicago, and Young is a confessed gambler. The jury saw and heard them and the witnesses produced by them testify, and while the direct evidence that Young was connected with McCormick and Keefe is very meagre, in view of all the circumstances proven on the trial, if no error of law had been committed during the trial we would not reverse the case on the ground that the evidence was not sufficient to sustain the verdict. The only evidence tending to connect Young with McCormick and Keefe, and to show a conspiracy between Young, McCormick and Keefe to work the confidence game upon Greear, other than Greear's testimony, was certain evidence in writing of which secondary evidence was admitted upon the trial in the place of the original written evidence, and this secondary evidence, it is claimed by plaintiffs in error, was admitted without a proper foundation being laid for its admission, and that the admission of such secondary evidence constitutes reversible error.

Greear testified that while in Minneapolis, Keefe showed him two letters purporting to be written to Keefe by McCormick, in one of which McCormick said he wanted Keefe to get a good, honest man with money to go to Chicago and make "sure thing" bets on horse races. When asked where the letter was, he said Keefe destroyed it. He afterwards said Keefe destroyed one letter, and afterwards said Keefe destroyed the letter other than the one containing the statements above referred to. His testimony, when taken as a whole, clearly showed that the last time he saw the letter, if

he ever saw such a letter, it was in the possession of Keefe. Objection was made to the admission of parol proof of the contents of said letter on the ground that the evidence showed the letter was in the possession of Keefe when last seen by the witness and that Keefe had not been notified to produce the letter upon the trial. The general rule is, that parol evidence cannot be received of the contents of a writing unless a proper foundation has been laid for its admission by notifying the party in whose possession the writing is, to produce it upon the trial or by showing that it has been lost or destroyed. No such foundation was here laid with reference to this letter, and the court erred in permitting parol proof of its contents. *Holbrook* v. *Trustees of Schools,* 22 Ill. 539; *Wright* v. *Raftree,* 181 id. 464.

The court also permitted the State to introduce in evidence a copy of a telegram purporting to have been sent by Keefe from Mankato, Wis., June 13, 1905, to Fred Gondorf (McCormick) at Chicago, requesting Gondorf (McCormick) to meet Keefe the next day at 10:30 at the Majestic Hotel, without proof of the loss or destruction of the original telegram or even that the copy offered was a copy of the original. The copy introduced was the copy retained by the telegraph company among its files in its Chicago office, and the court seems to have entertained the view that such copy was the original. This was not the correct view. It was not shown that Fred Gondorf (McCormick) ever received said telegram, or that it was ever acted upon by either Keefe, McCormick or Young, or that it was signed or sent by Keefe. It was introduced as the admission of Keefe that he knew McCormick and desired to have him meet him. In order to bind Keefe it was necessary to show he signed or sent the telegram or that he acted upon the telegram after it was received, and the best evidence of the contents of the telegram was the original telegram filed at Mankato, Wis. (*Matteson* v. *Noyes,* 25 Ill. 481; *Morgan* v. *People,* 59 id. 58.) It was error to admit in evidence the copy of said telegram.

When Keefe was arrested, a card was taken from his vest pocket upon which was written, "L. Y., 3030 Indiana avenue, phone Douglas 2685," which were the initials of Louis Young, the number of his residence and his telephone number. The police officer who received the card from the officer who took it from Keefe, testified that the last time he saw it, which was four or five days before the trial, he gave it to the assistant State's attorney. Young testified he had never seen the card, knew nothing of its contents or how Keefe came by it. The court, without requiring the production of the card by the assistant State's attorney or proof of its loss or destruction, over the objection of the plaintiffs in error, permitted the police officers to state what was written on the card at the time it was taken from Keefe. This evidence was exceedingly damaging to Young as it tended to connect Keefe with him, and it was error to admit parol proof of what was written on the card without proof of the loss or destruction of the card. *Mariner* v. *Saunders,* 5 Gilm. 113; *Whitehall* v. *Smith,* 24 Ill. 166; *Wing* v. *Sherrer,* 77 id. 200; *Williams* v. *Case,* 79 id. 356.

The plaintiffs in error have urged other grounds of reversal, but as the matters complained of are not likely to occur on another trial it is not necessary that they be here considered.

For the errors of the court in admitting in evidence the copy of said telegram and parol proof of the contents of said letter and the matter written upon said card without the proper foundation having been laid for the admission of secondary evidence, the judgment of the criminal court will be reversed and the cause remanded to that court for a new trial. ·                                 *Reversed and remanded.*